UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MAXWELL HEIRSCH, INC d/b/a<br>VISITING ANGELS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>VELOCITY RISK UNDERWRITERS, LLC,<br>INDPENDANT SPECIALTY INSURANCE<br>COMPANY  and<br>CERTAIN UNDERWRITERS AT LLOYD'S,<br>LONDON,<br><br>　　　　　Defendants. | CIVIL ACTION NO.: 23-cv-495<br><br>DISTRICT JUDGE:  BARRY W. ASHE<br><br>MAG.:  DONNA PHILLIPS CURRAULT |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT INSURERS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION PENDING ARBITRATION**

NOW INTO COURT, through undersigned counsel of record, comes Plaintiff, Maxwell Heirsch, Inc., d/b/a Visiting Angels (hereinafter "Visiting Angels"), who opposes the Motion to Compel Arbitration and to Stay Litigation Pending Arbitration filed by a group of insurers consisting of Certain Underwriters at Lloyds, London Subscribing to Policy No. VRR-CU-805057-01, Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Binding Authority No. B604510568622021, and Independent Specialty Insurance Company (collectively, the "Insurers") for the reasons set forth in this memorandum.

This case involves a dispute over property damage to Plaintiff's office caused by Hurricane Ida. Visiting Angels allege that the Insurers have failed to fairly adjust significant hurricane damage at the properties, and seek compensatory damages for its property damage, and penalties and attorney's fees for the Insurers' arbitrary and capricious breach of their duty of good faith in their handling of Visiting Angel's claims.  After the claim has been pending for almost two years, the Insurers now ask the Court to compel Visiting Angels to submit to arbitration in Tennessee, and to either stay or dismiss this case.

1

The Insurers' motion should be denied. The Insurers' policies do not contain a valid arbitration agreement because there was no written agreement to arbitrate signed by both parties as required by Section II of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"); accordingly, the Convention does not apply to the Insurers' policies to require that the claims be arbitrated. Plaintiff acknowledges the Fifth Circuit's decision to the contrary in *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir. 1994), but as the following demonstrates, there have been several developments in both the Fifth Circuit and in other circuit courts of appeal that have undermined its reasoning.

Alternatively, if the court determines that the arbitration clause should be enforced, it should clarify that Louisiana substantive law—including La. R.S. 22:1892 and La. R. S. 22:1973—applies to the arbitration of the claims. See: *Preston v. Ferrer*, 552 U.S. 346, 128 S. Ct. 978, 987 (2008) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral ... forum."); *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 720 n. 21 (5th Cir. 2009) ("The Supreme Court has emphasized that arbitration agreements are forum-selection provisions and do not displace substantive rights afforded by a statute or other substantive law.").

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Visiting Angels owns a business property located in Jefferson Parish at 1929 Hickory Avenue, Harahan, Louisiana 70123. Visiting Angels is a locally owned and operated home health care agency serving seniors throughout the Metairie, Kenner and Greater New Orleans Area. On August 29, 2021, Plaintiff's property sustained significant damage when Hurricane Ida made landfall in South Louisiana. At the time of Hurricane Ida, Visiting Angel's property was insured by policies of commercial property insurance issued by the Insurers. Upon discovering the extent of their damage, Plaintiff made a timely claim with the Insurers for damage to the property.

The Insurers sent adjusters to the property which triggered the statutory timeline within which the Insurers are required to make an unconditional tender to its insured of the undisputed portion of the claim. *Aghighi v. Louisiana Citizens Prop. Ins. Co.*, 119 So.3d (La. App. 4 Cir. 2013. The Insurers did not make adequate tenders within the statutory thirty day deadline (La. R.S. 22:1892) or the statutory sixty day deadline (La. R.S. 22:1973).

Prior to representation by counsel, in an effort to have its insurance claim properly evaluated and adjuster, Plaintiff retained a public adjuster and in December 2022, Plaintiff provided the Insurers with a supplemental proof of loss including. The proofs of loss included 1) an evaluation of the claim by Burlwood Associates, 2) estimates of damage for the insured premise, 3) photographs, 4) Damaged Content List and Mold Evaluation Report by Mold Zero USA. The Insurers did not make adequate tenders within the statutory thirty day deadline (La. R.S. 22:1892) or the statutory sixty day deadline (La. R.S. 22:1973) from receipt of the proofs of loss.

On February 8, 2023 Plaintiff filed this suit in the United States District Court for the Eastern District of Louisiana. (Rec. Doc. 1). The Complaint sought recovery for property damage, and for penalties and attorney's fees under La. R.S. 22:1892 and La. R.S. 22:1973. On June 14, 2023, the Insurers filed this motion to compel arbitration and to stay or, alternatively, dismiss the proceedings. (Rec. Doc. 22-1).

**II.   THE ARBITRATION CLAUSE IS UNENFORCEABLE BECAUSE IT IS NOT AN "AGREEMENT IN WRITING" SIGNED BY BOTH PARTIES AS REQUIRED BY ARTICLE II OF THE CONVENTION**

The Insurers seek to compel arbitration based on Article II of the Convention. In support of this argument, the Insurers have attached a copy of the insurance policy at issue as Exhibit "A" to their Memorandum In Support. Importantly, the insurance policy at issue is not signed by Plaintiff.

The Fifth Circuit has identified two considerations when determining whether the parties have agreed to arbitrate a dispute: "(1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute falls within the scope of that arbitrations agreement." *Will-Drill Resources, Inc. v. Samson*

3

*Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.*, quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002). In this case, there is no valid agreement to arbitrate within the meaning of Article II of the Convention, which is the sole basis upon which the Insurers seek to compel arbitration.

Article II of the Convention provides in relevant part:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, *signed by the parties* or contained in an exchange of letters or telegrams.

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Article II (New York, 1958) (emphasis added). An "agreement in writing" within the meaning of the Convention can therefore consist of either "an arbitral clause in a contract" or "an arbitration agreement."

This case involves "an arbitral clause in a contract" because the Insurers rely on an arbitration clause contained in its insurance policy. The arbitral clause at issue is not signed by Visiting Angels, and thus is not an agreement in writing "signed by the parties."   It is anticipated the Insurers will argue that the "signed by the parties" language in Article II modifies only "an arbitration agreement" and not "an arbitral clause in a contract." As set forth below, such a construction of the text does not give effect to the comma that separates the phrase "signed by the parties" from the serial list that precedes it. See: *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007) ("when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item"). For the reasons that follow, the motion should be denied because the arbitral clause at issue was not signed by the insured as Article II, properly construed, requires.

### A. Principles of Construction

The Convention is a treaty. Just as with statutory interpretation, interpreting treaties begins with "the text of the treaty and the context in which the written words are used." *Air Fr. v. Saks*, 470 U.S. 392, 397, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). Statutory construction—and thus the interpretation of a treaty—is a "holistic endeavor" and must account for the statute's "full text, language as well as punctuation, structure and subject matter." *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S. Ct. 2173, 2182 (1993). The plain meaning of a text "will typically heed the commands of its punctuation." *Id*., 508 U.S at 454, 113 S. Ct at 2182.

Among the rules of punctuation applied in construing statutes is this: When a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents. *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd*., 186 F.3d 210, 214 (2d Cir. 1999), *abrogation on other grounds recognized by Marks on Behalf of SM v. Hochhauser*, 876 F.3d 416, 420 (2d Cir. 2017). The Fifth Circuit expressly adopted this canon of statutory construction in *Sobranes Recovery Pool, supra,* and contrasted it with the related rule of the last antecedent as follows:

> Although under the last antecedent rule, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows," it is not an unyielding rule. There is a "grammatical corollary": when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item.

*Id*., 509 F.3d at 223. The Fifth Circuit illustrated the application of the "grammatical corollary" with the following:

> For example: "Compare the Fifth Amendment of the Constitution, which provides that no person shall 'be deprived of life, liberty, or property, without due process of law.' The comma before the phrase 'without due process of law' indicates that the phrase modifies 'life,' 'liberty,' and 'property.' This obviously follows the grammatical rule."

Id. 509 F.3d at 223 n. 19, quoting *Stepnowski v. C.I.R*., 456 F.3d 320, 324 n. 7 (3d Cir.2006).

More recently, the United States Supreme Court applied this "grammatical corollary" in *Facebook, Inc.*

5

*v. Duguid*, ___ U.S. ___, 141 S. Ct. 1163 (2021), referring to it as the "series-qualifier canon," as follows: "Under conventional rules of grammar, '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series'." *Id*., 141 S. Ct. at 1169, quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Scalia & Garner) (quotation modified in original). The court stated, "This canon generally reflects the most natural reading of a sentence." *Id*. The court continued, "As several leading treatises explain, '[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one.' W. Eskridge, Interpreting Law: A Primer on How to Read Statutes and the Constitution 67–68 (2016); see also 2A N. Singer & S. Singer, Sutherland Statutes and Statutory Construction § 47:33, pp. 499–500 (rev. 7th ed. 2014); Scalia & Garner 161–162." *Id*., 141 S. Ct. at 1170. Accordingly, both the Supreme Court and the Fifth Circuit have recognized a grammatical rule or corollary in the interpretation of a text to the effect that when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this is evidence that the modification applies to the whole list and not only the last item.

### B. Application to the Convention

The application of the foregoing principles of construction to Article II of the Convention establishes that there is no valid agreement to arbitrate in this case and thus no subject matter jurisdiction in this Court. The Court should therefore deny the motion to compel arbitration and remand this case to state court.

Section 2 of Article II employs the precise sentence structure to which the Fifth Circuit said the "grammatical corollary" applies: a serial list followed by modifying language that is set off from the last item in the list by a comma. Specifically, the comma separates the serial list ("an arbitral clause in a contract or an arbitration agreement") from the modifying phrase ("signed by the parties or contained in an exchange of letters or telegrams"). This suggests that the modifying phrase is meant to apply to both elements in the series, such that an "agreement in writing" under Article II shall—i.e., must—include "an arbitral clause in a contract

6

signed by the parties or contained in an exchange of letters or telegrams" or "an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams." Absent such a reading of the language, the comma serves no grammatical purpose and is rendered mere surplusage, contrary to "the fundamental rules that 'we must construe statutes so as to give meaning to all terms,' and 'we cannot accept' a construction that renders statutory text 'mere surplusage'." *Franco v. Mabe Trucking Company*, 3 F.4th 788, 799 (5th Cir. 2021), quoting *Incorporated Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 264 (5th Cir. 2014). Because Visiting Angels did not sign the contract containing the arbitral clause (or the clause itself), there is no valid agreement in writing in this case and the Court should deny the motion to compel arbitration.

As noted above, Plaintiff acknowledges the contrary Fifth Circuit precedent in *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir. 1994). In *Sphere Drake*, the court construed Article II of the Convention to require either (1) an arbitral clause in a contract or (2) an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams. *Id*. at 669. The court held that "[b]ecause what is at issue here is an arbitral clause in a contract, the qualifications applicable to arbitration agreements do not apply." *Id*. Despite the presence of a comma immediately before the phrase "signed by the parties," the court without discussion held that it modified only "an arbitration agreement"—the phrase that it immediately followed. The *Sphere Drake* court thus essentially applied the last antecedent rule without explaining why it did so or considering the grammatical effect of the comma in its construction of Article II, Section 2.

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Honorable Court deny defendants, Motion to Compel Arbitration and Stay Litigation Pending Arbitration. Alternatively, if the court determines that the arbitration clause should be enforced, Plaintiff respectfully requests that the Court clarify that Louisiana substantive law—including La. R.S. 22:1892 and La. R. S. 22:1973—applies to the arbitration of the claims.

Respectfully submitted,

HOUGHTALING LAW FIRM, LLC

BRIAN J. HOUGHTALING, Bar No. 30258
3500 North Hullen Street
Metairie, LA 70002
Telephone: (504) 456-8629
Facsimile: (877) 448-5339
brian@houghtalinglaw.com

*/s/ Eric J. O'Bell/ T.A.*
_____
ERIC J. O'BELL, Bar No. 26693
OF COUNSEL
3500 North Hullen Street
Metairie, LA 70002
Telephone:   (504) 456-8677
Facsimile:   (887) 448-5339
ejo@obelllawfirm.com
ATTORNEYS FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2023, a true and correct copy of the foregoing pleading was filed electronically with the Clerk of Court of the Eastern District of Louisiana by using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the CM/ECF system.

*/s/ Eric J. O'Bell*_____
Eric J. O'Bell